IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Donald Gatewood (#258776), | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Case No. 19 CV 50275 |
| v. | ) ) ) | Judge Rebecca R. Pallmeyer |
| Illinois Dep't of Corrections, et al., | ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's application for leave to proceed *in forma pauperis* [8] is granted. The court authorizes and orders the trust fund officer at Plaintiff's place of incarceration to deduct $1.00 from Plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee, and to continue making monthly deductions in accordance with this order. **Plaintiff's trust fund officer must collect 40% of all income into his trust account until accrued filing fees are paid.** The court on its own motion dismisses the Illinois Department of Corrections and Wexford Health Services as Defendants on initial review pursuant to 28 U.S.C. § 1915A. Plaintiff's motion for service of process at government expense [R. 4] is granted. The court directs the Clerk to: (1) send copies of this order to the trust account office at Plaintiff's place of confinement, and to the Court's Fiscal Department; (2) file Plaintiff's complaint [R. 1]; (3) issue summonses for service on Warden John Varga and Dr. John O'Brien; and (4) mail Plaintiff two blank USM-285 service forms, a magistrate judge consent form, filing instructions, and a copy of this order. The court appoints the U.S. Marshal to serve Defendants. The court advises Plaintiff that a completed USM-285 form is required for service on each Defendant. Plaintiff must fill out and return the required service form or this case may be dismissed. The U.S. Marshal will not attempt service on Defendant unless and until the required form is received. Plaintiff's motion for attorney representation [5] is granted to the extent that the court refers this matter to the Northern District's Settlement Assistance Program.

## STATEMENT

Plaintiff Donald Gatewood, currently an Indiana prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, correctional officials and health care providers at the Dixon Correctional Center, violated Plaintiff's constitutional rights by acting with deliberate indifference to his dental needs. Plaintiff alleges that the extraction of an impacted wisdom tooth was botched, and that he was denied pain medication and timely corrective treatment following the procedure.

Because Plaintiff is unable to prepay the filing fee, the court grants his motion for leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. §§ 1915(b)(1) and (2), the court authorizes and orders: (1) Plaintiff to immediately pay (and the facility having custody of him to automatically remit) $1.00 to the Clerk of Court for payment of the initial partial filing fee. Payments must be collected until the $350 filing fee is paid in full. All payments shall be sent to the Clerk of Court, United States District court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's

Desk, 20th Floor, and shall clearly identify Plaintiff's name and the case number assigned to this case.

The court next considers Plaintiff's complaint. Under 28 U.S.C. § 1915A, the court is required to screen prisoners' complaints and dismiss the complaint, or any claims therein, if the court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune Defendant. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they review motions to dismiss UNDER FED. R. CIV. P. 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The short and plain statement must "give defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## **FACTS**

Plaintiff Donald Gatewood, currently incarcerated in Indiana was at relevant times an inmate at the Dixon Correctional Center. Defendant John Varga was Dixon's warden. Defendant John O'Brien was a prison dentist. Plaintiff also sues Wexford Health Sources and a "Jane Doe" dental assistant.

Plaintiff alleges the following facts, assumed true for purposes of the court's threshold review: On January 27, 2019, Plaintiff was admitted to the custody of the Illinois Department of Corrections. Plaintiff underwent a medical screening as part of the intake process. Dixon health care providers determined that Plaintiff suffers from bipolar disorder, anxiety, depression, and suicidal ideations.

On May 23, 2017, Plaintiff submitted a sick call request complaining of pain in one of his wisdom teeth. Two days later, Plaintiff saw Dr. O'Brien, who placed him on the wait list for further (unspecified) treatment. O'Brien prescribed no medications while Plaintiff awaited treatment.

On October 24, 2017, Dr. O'Brien and his assistant performed a tooth extraction, using an array of different instruments. Before the procedure was over, the anesthesia began to wear off. Plaintiff experienced slight pain at first, but the pain became gradually worse. Plaintiff alerted Dr. O'Brien, who assured him that the procedure was almost over. O'Brien continued to work on the tooth. Afterwards, Plaintiff received no antibiotics or pain relievers.

The next day, Plaintiff reported to the prison "med line" to pick up pain medication. The individual dispensing medications informed Plaintiff that the dental department had not issued him a prescription for pain medication. Plaintiff told a shift officer that he was experiencing

"excruciating and extreme" pain, a swollen face, and "bone fragments tearing through his gums." (R. 1, Complaint, ¶ 7.)   The officer instructed Plaintiff to submit a sick call request.

By the following day, after three nearly sleepless nights, Plaintiff was unable to eat anything but yogurt and other soft foods, and only when the prison served them.  Plaintiff had ibuprofen on hand for a shoulder injury and took as much as he could tolerate to alleviate the pain. In pain and "mentally exhausted," Plaintiff contemplated suicide.  (*Id.*, ¶ 8.)

On October 29, 2017, Plaintiff filed an emergency grievance regarding what he perceived to be a poorly-performed procedure, and concerning his need for pain medication and a follow-up examination.  On November 2, 2017, the grievance was returned to him marked "emergency . . . not substantiated." (*Id.*, ¶ 10.).  The form instructed Plaintiff to resubmit his grievance in the normal manner.  Plaintiff did so, submitting another grievance through the regular channels, but he received no response.  He also submitted a third grievance directly to the Administrative Review Board, but the ARB rejected that grievance as untimely.

Plaintiff had to return to the dental clinic at least six times to address the complications from the tooth extraction.  He maintains that his health has somehow been "significantly and permanently damaged" as a result of Defendants' alleged actions [and inaction].  (*Id.*, ¶ 14.)

## ANALYSIS

Accepting Plaintiff's factual allegations as true, the court finds that the complaint states a colorable cause of action under 42 U.S.C. § 1983.  Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011).  Prison employees must provide inmates with medical care that is adequate in light of the severity of the condition and professional norms.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).  A Section 1983 medical claim requires the prisoner-plaintiff to allege facts showing that he or she suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

Here, Plaintiff has alleged that he suffered from an objectively serious medical condition. "[D]ental care is one of the most important medical needs of inmates."  *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (citation omitted).  Tooth decay and the resulting dental pain can rise to the level of a serious medical need.  *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).  Moreover, a condition may be objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain."  *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997)).  The concept of deliberate indifference encompasses delaying treatment to the point that an inmate's injury is exacerbated, or pain is unnecessarily prolonged.  *McGowan*, 612 F.3d at 640.

In addition, Plaintiff has stated facts suggesting that jail employees acted with deliberate indifference.  For liability to attach under 42 U.S.C. § 1983, the defendant must be subjectively aware of and consciously disregard the inmate's medical need.  *Farmer*, 511 U.S. at 837.  "This subjective standard requires more than negligence and it approaches intentional wrongdoing."

*Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). But deliberate indifference encompasses conduct such as the refusal of effective treatment, *see Fields*, 653 F.3d at 556, or "blatantly inappropriate" treatment, *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Plaintiff contends that Defendants failed to provide pain medication or follow-up care even though his condition plainly reflected that the procedure had gone terribly awry. And Plaintiff's grievances would have arguably made the warden aware of his distress.

It must be emphasized that "[d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Arnett*, 658 F.3d at 751 (internal citations omitted); *see also Holloway*, 700 F.3d at 1073 (same). According to the Supreme Court, deliberate indifference is comparable to criminal recklessness. *Farmer*, 511 U.S. at 837; *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) ("Negligence—even gross negligence—is insufficient to meet this standard"). "[A] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe*, 631 F.3d at 857 (quoting *Sain v. Wood,* 512 F.3d 886, 894-95 (7th Cir. 2008)). For liability to attach under Section 1983, the medical professional's decisions must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain,* 512 F.3d at 895 (citation and internal quotation marks omitted); *Coe v. Atkins*, No. 15 CV 6869, 2017 WL 2080358, at *2 (N.D. Ill. May 15, 2017) (same). Nothing in this order, which is based on a preliminary review of the complaint, precludes any legal argument that Defendants Varga and O'Brien may advance in response to Plaintiff's allegations.

The court on its own motion dismisses the Illinois Department of Corrections as a Defendant on initial review pursuant to 28 U.S.C. § 1915A. The Eleventh Amendment bars private litigants' suits for damages against the State of Illinois and state agencies in federal court. *See, e.g., Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 403 (7th Cir. 2018) ("The Eleventh Amendment bars most claims in federal court against a state that does not consent to the suit") (citations omitted); *Turpin v. Koropchak*, 567 F.3d 880, 883 n.4 (7th Cir. 2009); *see also Hurt v. Corcoran*, No. 17 CV 7909, 2019 WL 3842819, at *6 (N.D. Ill. Aug. 15, 2019) ("The Eleventh Amendment bars damages actions in federal court against a state, state agencies, or state officials acting in their official capacities") (citations omitted); *Sterigenics U.S., LLC v. Kim*, 385 F. Supp. 3d 600, 607 (N.D. Ill. 2019) ("The Eleventh Amendment … bars private individuals from suing a state or state officials acting in their official capacities in federal court without the state's consent) (citation omitted).

The court likewise dismisses Wexford Health Sources, Inc., as a Defendant on threshold review pursuant to 28 U.S.C. § 1915A. Plaintiff has offered no basis for liability on the part of Wexford, the company that contracts with the IDOC to provide medical care to inmates. "Respondeat superior liability [which makes employers liable for the actions of their employees] does not apply to private corporations under § 1983." *Shields v. Ill. Dep't. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). To be sure, a Section 1983 claim can be asserted against a corporate entity by alleging that the "injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Id.* at 796. An unconstitutional policy or custom can take three forms: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale v. City of Chi.*, 690 F.3d 829, 834 (7th Cir. 2012) (internal quotation marks and citation omitted). But in

4

the case at bar, Plaintiffs offer no basis to support an inference that Wexford itself is somehow responsible for any deficiencies on the part of the prison employees who provided dental care.

The court directs the Clerk of Court to issue summonses for service of the complaint on Defendants Varga and O'Brien. The court further directs the Clerk to mail Plaintiff two blank USM-285 (Marshals service) forms. The court advises Plaintiff that a completed USM-285 form is required for service on each Defendant. The Marshal will not attempt to serve a Defendant unless and until the required form is received. Plaintiff must therefore complete and return a service form for Defendants, and failure to do so may result in dismissal of the unserved Defendant, as well as dismissal of this case in its entirety.

The court appoints the U.S. Marshals Service to serve Defendants Varga and O'Brien. The court directs the Marshal to make all reasonable efforts to serve Defendants. If either Defendant can no longer be found at the work address provided by Plaintiff, the Illinois Department of Corrections must furnish the Marshal with the Defendant's last-known address. The Marshal will use the information only for purposes of effectuating service or to show proof of service, and any documentation of the address shall be retained only by the Marshals Service. Address information will not be maintained in the court file nor disclosed by the Marshal, except as necessary to serve Defendants. The court authorizes the Marshal to send requests for waiver of service consistent with FED. R. CIV. P. 4(d) before attempting personal service.

The court instructs Plaintiff to mail/file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. The court advises Plaintiff that he must promptly advise the court and opposing counsel in the event of any change in his address. Failure to do so may lead to dismissal of this action for want of prosecution.

The court advises Plaintiff that there is a two-year statute of limitations for civil rights actions in Illinois. *See, e.g., Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); 735 ILCS § 5/13-202. Plaintiff should therefore attempt to identify the Jane Doe dental assistant as soon as possible.

Finally, the court grants Plaintiff's motion for attorney representation to the extent that the court refers this matter to the Northern District's Settlement Assistance program. The nature of the issues presented, the looming expiration of the statute of limitations, Plaintiff's incarceration in another state, and the potential need for a medical expert if his claims move forward all militate in favor of recruiting counsel. In the court's experience, the parties often find a swift and amicable resolution when they explore early settlement in this type of matter. Accordingly, the court finds that referral to the Settlement Assistance Program is appropriate under the circumstances of this case.

ENTER:

Date: December 23, 2019

_____
REBECCA R. PALLMEYER
United States District Judge