UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Donald Gatewood, <br><br> Plaintiff, <br><br> v. <br><br> John Varga, John O'Brien, and Tina O'Brien, <br><br> Defendants. | Case No. 3:19-cv-50275 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donald Gatewood, who is incarcerated at Dixon Correctional Center, brings this suit under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment. He claims that Defendants Dr. John O'Brien and Tina O'Brien acted with deliberate indifference in performing a wisdom tooth extraction. Defendants now move for summary judgment. For the following reasons, their motion is granted.

I. **Legal Standard**

   A. **Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir.

1

2008). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the nonmovant; it does not require that the dispute be resolved conclusively in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). However, "[s]peculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996). Indeed, "the nonmoving party 'must do more than simply show there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Courts are not required to draw every conceivable inference from the record, only reasonable ones." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) (cleaned up).

### B. Local Rule 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). "District courts are 'entitled to expect strict compliance' with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions." *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities.").

2

## II. Background[1]

Mr. Gatewood was incarcerated at Dixon Correctional Center ("Dixon") from January 2017 to April 2019. DSOF 1. At the time of the events in this case, Dr. O'Brien was the chief dentist at Dixon, and Ms. O'Brien was a dental staff assistant. DSOF 2-3.[2]

Before arriving at Dixon, Mr. Gatewood underwent a Panorex at the Stateville Northern Reception and Classification Center. DSOF 24. A Panorex is an x-ray that produces a flat image of a patient's entire mouth. *See* DSOF 11. Dr. O'Brien would review a patients' x-rays upon their arrivals at Dixon. DSOF 24.

Around May 25, 2017, Mr. Gatewood saw Dr. O'Brien because he was experiencing tooth pain. DSOF 26-27. Dr. O'Brien examined Mr. Gatewood and noted that his wisdom tooth (tooth #32) had a mesial angular impaction and was inflamed. DSOF 28. The impacted tooth was close to the mandibular canal, and so Dr. O'Brien had his assistants schedule extra time for Mr. Gatewood's extraction. *Id.* Dr. O'Brien also found that Mr. Gatewood had inflammation surrounding the tooth (pericoronitis). DSOF 30. Dr. O'Brien didn't believe that additional x-rays would be necessary because the Panorex had been taken only four months prior and it was clear that Mr. Gatewood's wisdom tooth was impacted and irritated. DSOF 32. Dr. O'Brien also didn't think it medically necessary to refer Mr. Gatewood to an

---

[1] The facts are drawn from Defendants' statement of facts, Dkt. 127 ("DSOF"); Mr. Gatewood's response to Defendants' statement of facts, Dkt. 129 ("PRDSOF"); Mr. Gatewood's statement of facts, Dkt. 129 ("PSOF"); and Defendants' response to Mr. Gatewood's statement of facts, Dkt. 133 ("DRPSOF").

[2] Ms. O'Brien left Dixon in June 2018; Dr. O'Brien retired in December 2018. DSOF 2-3.

3

offsite oral surgeon, as he had performed countless tooth extractions and was competent to do so. DSOF 33.

Around August 23, 2017, Mr. Gatewood was prescribed Motrin 800mg for shoulder pain. DSOF 37.

Mr. Gatewood's wisdom tooth extraction took place around October 2017. *See* DSOF 38, 47. Ms. O'Brien was present to assist Dr. O'Brien in the procedure. *See* DSOF 5-6. The procedure lasted an hour and forty-five minutes. PSOF 45. (A simple wisdom tooth extraction may take only fifteen minutes, but a badly impacted wisdom tooth may take several hours to extract. DSOF 18.) During an extraction, Dr. O'Brien could use several different instruments. DSOF 18. Mr. Gatewood remembers Dr. O'Brien switching between several instruments, one of which was a "plier-like instrument" that kept slipping off his tooth. DSOF 44; *see also* PSOF 1.

As was his general practice, Dr. O'Brien used a single carpule of Lignospan, which consists of a 2% solution of lidocaine with epinephrine, to anesthetize Mr. Gatewood. DSOF 16, 41. Lignospan's drug safety information recommends an initial dose between one-half and two-and-a-half carpules to achieve a mandibular block. DSOF 16. A mandibular block with Lignospan generally will last a couple hours. DSOF 17. Dr. O'Brien's practice was to administer more lidocaine if a patient requested more, although that was unusual. DSOF 41; PSOF 18.

Mr. Gatewood felt "extreme pain" during the procedure—he'd never experienced that kind of pain before, even with other tooth extractions. PSOF 6, 12. At some point during the procedure, Dr. O'Brien administered a second carpule of

4

lidocaine, but it is unknown when during the procedure this occurred. DSOF 46. Fifteen minutes before the procedure ended, Mr. Gatewood began to feel pain return to his mouth and the numbness go away. DSOF 45; PRDSOF 45. His mouth was still "slightly" numb, but he told Dr. O'Brien that he was in pain. DSOF 45; PRDSOF 45; PSOF 7.

After the procedure, Mr. Gatewood's mouth was hurting and bleeding. PSOF 9. Dr. O'Brien did not prescribe any pain medication because Mr. Gatewood already had the Motrin prescription from his shoulder pain in August. DSOF 48. Dr. O'Brien generally did not prescribe narcotics unless there was a physical manifestation that he believed justified such a prescription. PSOF 23. When Mr. Gatewood returned to his cell, he had blood on his face from the procedure, and he was still in pain. PSOF 11. Mr. Gatewood took "a lot" of Motrin and said that it helped. DSOF 49. However, things still hurt. In the following days, he struggled to sleep because of the pain. PSOF 14. Three days after the procedure, Mr. Gatewood contemplated suicide by tying a sheet around his neck. DRPSOF 15.

Around October 27, 2017, Mr. Gatewood returned to Dixon's healthcare unit because his mouth continued to hurt, and he was prescribed an antibiotic by Dr. John Schmidt for a potential dry socket infection. DSOF 54. Soon after, around October 31, 2017, Mr. Gatewood saw Dr. O'Brien again for a follow-up appointment. DSOF 57. Mr. Gatewood reported that he still had bone fragments coming out of his jaw. *Id.* Dr. O'Brien noted the dry socket and prescribed Mr. Gatewood with Motrin. DSOF 58. A little over a week later, around November 9, 2017, Mr. Gatewood had

5

another follow-up appointment, during which he told Dr. O'Brien that he was doing much better, though he had some soreness. DSOF 59. Dr. O'Brien's assessment was that Mr. Gatewood was healing normally. DSOF 60. Around December 29, 2017, Mr. Gatewood saw Dr. Schmidt again because bone fragments continued to come through his mouth. DSOF 63. Dr. Schmidt gave more antibiotics and planned to clean the area if it didn't resolve. *Id.* Today, Mr. Gatewood no longer has any pain from the extraction. DSOF 64.

Dr. O'Brien believes that he exercised sound medical judgment and acted within the standard of care in the extraction of Mr. Gatewood's wisdom tooth. DSOF 65.

### III. Analysis

In addition to arguing that summary judgment should be granted on substantive grounds for the remaining claims against Dr. O'Brien and Ms. O'Brien, Defendants argue that the claim against Ms. O'Brien is untimely. The Court finds that the statute of limitations bars the claim against Ms. O'Brien and does not address the merits of the § 1983 claim against her.

#### A. Dr. O'Brien

Title 42 U.S.C. § 1983 provides a cause of action against any person who, under color of a state's "statute, ordinance, regulation, custom, or usage" deprives any person of a right secured by the federal Constitution. 42 U.S.C. § 1983. Liability must be based on each defendant's knowledge and actions, *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012), which may include either direct participation in the "offending act," acting or failing to act with reckless disregard of someone's

6

constitutional rights when under a duty to safeguard them, or allowing an offending act to occur with one's knowledge or consent. *Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015).

The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To make a claim of deliberate indifference, a plaintiff must show (1) an objectively serious medical need (2) to which the defendant was deliberately indifferent. *Farmer v. Brennan*, 511 U.S. 825, 834, 847 (1994); *see also Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). In addition, the plaintiff must show that the deliberate indifference caused harm to the plaintiff. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). The parties do not dispute that Mr. Gatewood had an objectively serious medical condition. *See* Dkt. 139 at 4. The remaining questions are whether Dr. O'Brien acted with deliberate indifference and whether this deliberate indifference caused harm to Mr. Gatewood.

"Deliberate indifference requires a look into the subjective state of the defendant['s] mind." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022). To have a "sufficiently culpable state of mind," the defendant must be subjectively aware of the specific, serious medical need or risk and must disregard it by "failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 834, 847; *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). The defendant must know of the facts from which the risk is inferred, and the defendant must draw that inference. *Farmer*, 511 U.S. at 837. Deliberate indifference is a demanding standard "because

7

it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022). "Mere negligence or even civil objective recklessness simply is not enough." *Brown*, 38 F.4th at 550 (citing *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)) (cleaned up). Nor does medical malpractice constitute deliberate indifference. *Estelle*, 429 U.S. at 106. Under the Eighth Amendment, an individual is not entitled any "specific care" or the "best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), but only "adequate, minimum-level medical care." *Johnson*, 433 F.3d at 1013.

When a medical professional claims that the treatment he rendered issued from his medical judgment, that claim is owed deference as an assertion that he lacked a culpable mental state. *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). Deference to a claim of medical judgment may be overcome by evidence—direct or circumstantial—that the medical professional did not honestly believe his own explanation, including by his persistence in a course of treatment known to be ineffective, or by a departure from the standard of care so radical that one may infer that he did not exercise professional judgment at all. *Id.*; *Thomas v. Martija*, 991 F.3d 763, 768 (7th Cir. 2021). Mr. Gatewood does not dispute the fact that "Dr. O'Brien believes that he exercised sound, appropriate medical judgment and acted within the appropriate standard of care in the extraction of [Mr. Gatewood's] tooth." PRDSOF 65. That alone, absent evidence of a radical departure from the standard of care, warrants granting summary judgment.

8

Mr. Gatewood lists a number of alleged failings before, during, and after the wisdom tooth extraction. The Seventh Circuit has found it inappropriate to separate out "one portion of procedure of a 'medical treatment'" and scrutinize it for deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (declining to consider the plaintiff's desire for anesthesia in the removal of a toenail as a "separable medical need under the Eighth Amendment"); *see also Petties*, 836 F.3d at 728. Minor medical decisions that are made during a procedure are "classic examples of matters for medical judgment" and more appropriately resolved by tort law. *Snipes*, 95 F.3d at 591 (quoting *Estelle*, 429 U.S. at 107). With that in mind, the Court addresses Mr. Gatewood's specific complaints through the lens of analyzing the totality of care provided by Dr. O'Brien, *see Petties*, 836 F.3d at 728, and finds that no reasonable jury could conclude that Dr. O'Brien acted with deliberate indifference.

        *1.    Failure to review Mr. Gatewood's x-ray before the procedure.*

Mr. Gatewood argues that Dr. O'Brien failed to look at Mr. Gatewood's Panorex before the procedure. He relies on the absence of the x-ray in Mr. Gatewood's medical file[3] and Dr. O'Brien's inability to remember reviewing an x-ray before the procedure. Dkt. 139 at 10. Out of context, that might let a jury agree with Mr. Gatewood. But the record also includes undisputed facts suggesting that Dr. O'Brien did review the x-ray. Dr. O'Brien had indicated in Mr. Gatewood's medical chart that he reviewed the Panorex. PRDSOF 25. Dr. O'Brien wouldn't have seen

---

[3] But it is undisputed that Mr. Gatewood underwent a Panorex. DSOF 24.

9

how close the tooth was to the mandibular canal if he hadn't seen the Panorex. DSOF 28; Dkt. 127-2 at 63:14-17. There is no evidence that Dr. O'Brien remembers *not* looking at an x-ray. The only reasonable inference for his lack of memory is simply that he forgot by the time of his deposition.

Even if there were a dispute of fact as to whether Dr. O'Brien reviewed the x-ray, that doesn't make it a dispute of *material* fact. Mr. Gatewood does not explain how this violation of the standard of care rises to the level of a constitutional violation. *See Zaya*, 836 F.3d at 805 (requiring a "radical" departure from the standard of care). Moreover, Mr. Gatewood argues only that this is evidence of Dr. O'Brien's disregard for Mr. Gatewood's well-being; he has not shown that Dr. O'Brien's failure to review the x-ray actually caused an injury. *See Hunter*, 73 F.4th at 568.

  2.  *Failure to provide adequate anesthesia before the procedure.*

Next, Mr. Gatewood argues that Dr. O'Brien's decision to administer only one carpule of lidocaine at the beginning of the procedure shows "indifference to the pain that Mr. Gatewood predictably experienced later in the extraction." Dkt. 139 at 8. Defendants argue that this was Dr. O'Brien making a medical judgment. Dkt. 136 at 1.

Mr. Gatewood relies on his expert, Dr. Jay Grossman, who writes in his report that "no reasonable dentist" would have used less than two carpules of lidocaine. PSOF 34; Dkt. 139 at 9. Dr. Grossman's opinion is "only weakly probative" of Dr. O'Brien's mental state. *Zaya*, 836 F.3d at 807 ("By itself an expert's assessment that a treatment decision was unreasonable is not enough to

10

establish conscious disregard of a known risk.").[4] And "a mere difference of opinion among doctors" is not enough to establish a genuine dispute as to whether Dr. O'Brien possessed the requisite mindset. *See Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 680 (7th Cir. 2023). Nor does Dr. Grossman opine that Dr. O'Brien fell far below the standard of care. Mr. Gatewood's only other evidence that Dr. O'Brien should have known to use a higher dosage is that Dr. O'Brien knew the procedure would take a long time. Dkt. 139 at 8-9. But given Dr. O'Brien's belief that he was making a medically sound judgment, that the dosage was within the manufacturer's recommended range, and his general practice of administering more anesthesia if any patient needed it later in a procedure, the predictably long procedure time doesn't show that Dr. O'Brien had the requisite mindset. Maybe it was malpractice or negligence, but that is not enough for deliberate indifference. *Johnson*, 433 F.3d at 1012-13.

      3.    *Failure to provide additional anesthesia during the procedure.*

Mr. Gatewood then alleges that Dr. O'Brien did not administer an additional dose of anesthesia after feeling had returned to Mr. Gatewood's mouth, needlessly causing pain. Dkt. 139 at 5. The facts show that Mr. Gatewood experienced "extreme pain" that slowly returned to his mouth during the procedure. PSOF 6;

---

[4] Furthermore, it is unclear how much of Dr. Grossman's opinion is based on the facts of the case, as required by Federal Rule of Evidence 702(d). Because he was unable to review Mr. Gatewood's x-ray, he wrote in his expert report that he "cannot opine on the difficulty of the extraction" or "on the level of discomfort" experienced by Mr. Gatewood. Dkt. 129-1 at 9. In fact, Dr. Grossman provides no support for his conclusion that Dr. O'Brien acted unreasonably. *See id.* However, Defendants do not challenge Dr. Grossman under *Daubert* and instead rely on Eighth Amendment case law to diminish the relevance of Dr. Grossman's opinions. *See* Dkt. 136 at 2.

11

DRPSOF 6.[5] But the parties dispute whether Dr. O'Brien provided another carpule of lidocaine after Mr. Gatewood told him about the pain. PSOF 7; DRPSOF 7. According to Mr. Gatewood, Dr. O'Brien merely responded that the procedure was almost over. PSOF 7. On the other hand, there was a second carpule of lidocaine administered. DSOF 46. Dr. O'Brien testified that he would have administered more lidocaine if Mr. Gatewood requested it, but he wasn't sure whether he in fact did. DRPSOF 7.

Viewing the facts in Mr. Gatewood's favor, Mr. Gatewood's mouth didn't stay fully numb for the entire duration.[6] He started to feel pain as the numbness wore off, and when he expressed that to Dr. O'Brien, the response was that the procedure would soon be over. A reasonable jury could conclude that Dr. O'Brien knew Mr. Gatewood was in pain and that he ignored Mr. Gatewood's pain.

But that doesn't rise to the level of deliberate indifference. It's not even clear that could constitute malpractice; in his expert report, Dr. Grossman merely writes that "giving more anesthesia during the procedure happens daily in dental offices." PSOF 33. That doesn't come close to opining that Dr. O'Brien acted like "no minimally competent professional" would have under those circumstances. *Sain v.*

---

[5] Defendants object to Mr. Gatewood's deposition testimony, DRPSOF 6, but "self-serving" testimony should not be excluded just because of its self-serving nature. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.").
[6] Defendants rely heavily on the contention that Mr. Gatewood's mouth was numb during the entirety of the procedure, *e.g.,* Dkt. 136 at 5, but Mr. Gatewood testified in his deposition that his mouth was "slightly" numb and the numbness went away as time went on. DSOF 45; PRDSOF 45.

12

*Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)); *see also Snipes*, 95 F.3d at 592 ("It would be absurd to say . . . that the Constitution requires prison doctors to administer the least painful treatment."). In addition, the harm that Mr. Gatewood argues that he suffered—that is, unnecessary pain, *see* Dkt. 139 at 4—does not resolve the causation aspect of deliberate indifference; the Seventh Circuit has expressed skepticism at the idea of "needless pain" in the course of treatment. *See Snipes*, 95 F.3d at 592 ("We are not sure what exactly 'a risk of needless pain' is, or even if such a notion applies to Eighth Amendment deliberate indifference claims . . . .").

    4.    *Incompetence during the procedure.*

Mr. Gatewood also argues that Dr. O'Brien was incompetent in performing the extraction as evidence of deliberate indifference, although he does not dispute the fact that Dr. O'Brien was competent to perform the extraction. Dkt. 139 at 9-10; *see* PRDSOF 33. He remembers Dr. O'Brien continually changing instruments throughout the procedure, often with a comment that an instrument was the wrong size. PSOF 5. However, Mr. Gatewood has no evidence that Dr. O'Brien used the wrong instruments or was unfamiliar with them. It is also undisputed that Dr. O'Brien may have needed to use multiple instruments when performing an extraction. DSOF 18. It does not follow that Dr. O'Brien went forward with an unfamiliar procedure to cause Mr. Gatewood pain just because he tried to use some instruments that were the wrong size. The Court is required to draw only reasonable, and not speculative, inferences in Mr. Gatewood's favor. *See Moser*, 406 F.3d at 905.

As for the alleged comment that "maybe it was too early" to extract Mr. Gatewood's tooth, Dkt. 127-1 at 36:8,[7] the same applies. Even if Dr. O'Brien did make that statement during the procedure, it doesn't follow that Dr. O'Brien went forward with the procedure to cause Mr. Gatewood pain.

     5.    *Failure to provide additional pain medication after the procedure.*

Finally, Mr. Gatewood claims that Dr. O'Brien was deliberately indifferent by failing to prescribe narcotics at the end of the procedure. Dkt. 139 at 11-12. Neither the pain nor the lack of narcotics alone amounts to a constitutional violation. *Arce*, 75 F.4th at 681 ("[T]he Eighth Amendment does not entitle incarcerated patients to their preferred pain medication, nor does it impose the unrealistic requirement that doctors keep patients completely pain-free." (citations omitted)).

Relying on *Hayes v. Snyder*, 546 F.3d 516 (7th Cir. 2008), Mr. Gatewood argues that Dr. O'Brien did not use his medical judgment in refusing to write a prescription because he had a "a discriminatory blanket policy of refusing to provide narcotics to *incarcerated* (but not civilian) patients." Dkt. 139 at 11. Although both the doctor in *Hayes* and Dr. O'Brien refuse to prescribe painkillers based on patients' complaints of pain alone, PSOF 23, the denial of summary judgment in *Hayes* was based on that doctor's refusal to refer the patient to a specialist. *Hayes*, 546 F.3d at 526. The crux of the decision in *Hayes* was that the doctor claimed to

---

[7] Mr. Gatewood presents this piece of evidence to argue that Dr. O'Brien was incompetent in performing the extraction, not to argue that Mr. Gatewood didn't need the procedure. *See* Dkt. 139 at 10.

14

have no idea which specialist would be appropriate, despite the undisputed evidence that the patient needed to see a urologist for his testicular pain. *Id.*

In this case, Dr. O'Brien's refusal to prescribe narcotics was because he didn't think they were medically necessary, and Motrin would do a better job of alleviating swelling. DSOF 20, 50. In claiming Dr. O'Brien had a discriminatory policy, Mr. Gatewood misconstrues Dr. O'Brien's deposition testimony; Dr. O'Brien testified that he doesn't prescribe narcotics to incarcerated patients because, unlike with civilian patients, there isn't a social pressure to prescribe narcotics that are (in his opinion) unnecessary. DRPSOF 22; Dkt. 127-2 at 48:15-49:20. His decision to not prescribe narcotics is a medical judgment. There's no evidence that he didn't honestly believe that his medical explanation, nor is there evidence of a radical departure from "accepted professional practice." *Zaya*, 836 F.3d at 805.[8]

There is also little evidence showing how aware Dr. O'Brien was of the extreme pain that Mr. Gatewood describes feeling after the procedure. Dr. O'Brien did prescribe Motrin during the October 31 appointment. DSOF 58. During the November 9 appointment, Mr. Gatewood reported that he was feeling much better. DSOF 59. Mr. Gatewood also admits that the Motrin helped. DSOF 49. The record

---

[8] Mr. Gatewood relies on Dr. Grossman's opinion that Dr. O'Brien should have prescribed a narcotic. Dkt. 139 at 13. However, there are a few issues. First, the cited lines of Dr. Grossman's deposition testimony ask about Mr. Gatewood's pain during the procedure, not after. Dkt. 144 ¶ 40; Dkt. 140 at 34:13-17. That alone is enough to disregard Dr. Grossman's opinion. *See Malec*, 191 F.R.D. at 583. Second, as explained above, expert opinions are "only weakly probative" of another doctor's subjective mental state. *Zaya*, 836 F.3d at 807. Third, Dr. Grossman provides no explanation for his opinion that suggests that Dr. O'Brien violated the standard of care. *See* Dkt. 140 at 34:7-12.

does not provide enough for a reasonable jury to conclude that Dr. O'Brien persisted with Motrin for the pain while knowing it was ineffective. *See Arce*, 75 F.4th at 681.

### B. Ms. O'Brien

Defendants argue that Mr. Gatewood's claim against Ms. O'Brien are time-barred by the statute of limitations. Dkt. 128 at 11-12. Mr. Gatewood's wisdom tooth extraction occurred on October 24, 2017, and he first filed this lawsuit on October 24, 2019. Dkt. 1. It wasn't until October 23, 2020, that Ms. O'Brien was identified and named as a defendant in this case (replacing the "Jane Doe" defendant in the initial complaint). Dkt. 46. Because Mr. Gatewood's claim against Ms. O'Brien is under § 1983, it is subject to the two-year statute of limitations for personal-injury actions under Illinois law. *See Bryant v. City of Chicago*, 746 F.3d 329, 241 (7th Cir. 2014). Mr. Gatewood doesn't dispute the statute of limitations, but instead argues that equitable tolling is justified. Dkt. 139 at 17.

Because Illinois' statute of limitations applies in this case, Illinois' equitable tolling principles apply too. *Bryant*, 746 F.3d at 243. Mr. Gatewood must establish two elements: "diligence in the pursuit of [his] rights and the existence of an extraordinary circumstance that nonetheless stood in the way of [his] making a timely filing." *Madison v. U.S. Dep't of Lab.*, 924 F.3d 941, 947 (7th Cir. 2019); *see also Moore v. Burge*, 771 F.3d 444, 448 (7th Cir. 2014). Factors that can weigh in favor of equitable tolling include a pending motion for appointment of counsel and the court leading the plaintiff to believe that he has done everything required of him. *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 562 (7th Cir. 1996).

Mr. Gatewood argues that his motion for leave to proceed *in forma pauperis* and his motion for attorney representation—both filed on the same day as the complaint—tolled the statute of limitations. Dkt. 139 at 18-19. Ms. O'Brien doesn't dispute this, but tolling the statute of limitations until December 23, 2019, when the Court ruled on those pending motions, still leaves nearly ten months between when the statute of limitations had expired and when Ms. O'Brien was named as a defendant.

To address that gap, Mr. Gatewood then argues that the appointment of counsel led him to believe that he had done everything required of him up to that point and "essentially froze" the case until counsel had been "appointed in full" on November 10, 2020. Dkt. 139 at 18-19. However, as Defendants point out, counsel was appointed for the limited purpose of settlement with Dr. O'Brien and had nothing to do with his claim against Ms. O'Brien. Dkt. 136 at 12. Indeed, in Judge Pallmeyer's order that appointed counsel for this limited function, the paragraph preceding the appointment of counsel reads:

> The court advises Plaintiff that there is a two-year statute of limitations for civil rights actions in Illinois. *See, e.g.*, *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); 735 ILCS § 5/13-202. Plaintiff should therefore attempt to identify the Jane Doe dental assistant as soon as possible.

Dkt. 9 at 5. The order was explicit about Mr. Gatewood's responsibility to identify Ms. O'Brien, separate from the matter of attorney representation—the opposite of leading Mr. Gatewood to believe no further action was needed on his part.

Moreover, Mr. Gatewood's reliance on *Bryant v. City of Chicago* fails to note that the *Bryant* plaintiff had filed a motion to compel the defendant to disclose the

17

identities of two police officers. *Bryant*, 746 F.3d at 241. The Seventh Circuit held that the district court abused its discretion in finding the plaintiff's claims to be untimely despite not ruling on the motion to compel. *Id.* at 243-44. Unlike the plaintiff in *Bryant*, Mr. Gatewood made no such efforts to discover Ms. O'Brien's identity.

Mr. Gatewood also gives a nod to the COVID-19 pandemic, claiming its disruptions "undoubtably caused in part" the delay in identifying Ms. O'Brien. Dkt. 139 at 19. However, "[c]ourts have uniformly held that the COVID-19 pandemic by itself does not, as a matter of law and across-the-board, trigger equitable tolling." *Ericson v. Woloszyk*, No. 22-CV-03418, 2023 U.S. Dist. LEXIS 56426, at *8-9 (N.D. Ill. Mar. 31, 2023) (collecting cases). Mr. Gatewood doesn't allege any specific connection to the pandemic in his argument, so it is not a proper basis for equitable tolling. *See id.* at *9.

Because Mr. Gatewood has failed to establish that he diligently sought to discover Ms. O'Brien's identity or that there were extraordinary circumstances to justify equitable tolling, his claim against her is time-barred.

## IV. Conclusion

The Court grants Defendants' motion for summary judgment and dismisses the case with prejudice.

Date: December 29, 2023

Honorable Iain D. Johnston
United States District Judge

18